IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

LEVIA MOULTRIE,

**Plaintiff,**

v.

**PENN ALUMINUM INTERNATIONAL, LLC,**

Defendants.                                              No. 11-CV-00500-DRH-DGW

MEMORANDUM AND ORDER

**HERNDON, Chief Judge:**

### I.   Introduction and Background

Pending before this Court are defendant Penn Aluminum's motion for summary judgment (Doc. 168) and memorandum in support of the motion (Doc. 169). Defendant claims it is entitled to summary judgment on Count I because it is time-barred; Count III because plaintiff cannot establish that similarly situated employees were treated more favorably; and Count V because plaintiff did not engage in a protected activity, and the actions taken against him were not retaliatory, but based on legitimate reasons. Plaintiff Levia Moultrie disputes defendant's arguments (Doc. 187).

This case arises from a suit Moultrie filed against defendant claiming he was discriminated against on the basis of his race, and when he complained about it, he was retaliated against and written up for filing the grievances. In February 2009, plaintiff was reassigned in his duties at Penn Aluminum, which he alleges

was in violation of the seniority system. Although he filed a grievance through his union steward claiming racial discrimination, Moultrie alleged the grievance report the union filed contained no mention of racial discrimination. Penn Aluminum denied the grievance. After more incidents that Moultrie felt were racially discriminatory against him, he filed a complaint against Penn Aluminum on June 14, 2011 (Doc. 2), alleging a breach of the Collective Bargaining Agreement ("CBA").

Moultrie filed his first amended complaint (Doc. 31) on October 26, 2011. In his amended complaint, plaintiff added counts against the International Brotherhood of Electrical Workers, AFL-CIO, Local 702 ("IBEW") for breach of duty of fair representation and the Marmon Group, alleging it was the parent company of Penn Aluminum. On July 30, 2012, Moultrie filed a motion to voluntarily dismiss his claim against the Marmon Group (Doc. 125). On July 31, 2012, the Court granted Penn Aluminum's motion to dismiss Count IV (Doc. 126), finding plaintiff's claim under the Illinois Human Rights Act ("IHRA") to be untimely. On August 1, 2012, the Court acknowledged Moultrie's notice of voluntary dismissal and dismissed plaintiff's claims against the Marmon Group (Doc. 128).

On November 8, 2012, plaintiff filed a motion to voluntarily dismiss his claim against IBEW (Doc. 189). On November 9, 2012, the Court acknowledged Moultrie's notice of voluntary dismissal and dismissed plaintiff's claims against IBEW (Doc. 190). Thus Count II was dismissed from plaintiff's petition, leaving

only Counts 1, III, and V that are the subject of this motion for summary judgment.

## II. Summary Judgment

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record or affidavits that demonstrate an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All justifiable inferences are to drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

If the moving party meets its burden, the non-moving party has the burden of presenting specific facts to show there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. *Celotex*, 477 U.S. at 324. In ruling on a motion for summary judgment, the non-moving party's evidence "is to be believed," and all justifiable inferences drawn from it in the light most favorable to the non-moving party. *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999). Summary judgment in favor of the party with the burden of persuasion is

"inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Id.* at 553. However, there is no issue for trial unless there is sufficient evidence that favors the non-moving party for a jury to return a verdict for that party. *Anderson*, 477 U.S. at 249.

### III.   Analysis

**Count I Breach of Contract by Penn Aluminum**

Moultrie claims that Penn Aluminum breached its contract with him when it removed him from his duties at a "clean job" and reassigned him to "a dirty job." According to plaintiff, he had seniority over the person who was given his previous job and the reassignment and subsequent write up was racially motivated. Moultrie claims he was also written up for dropping a coil off the forklift he was driving, while another employee dropped five coils and was not written up. Moultrie filed a grievance with the union for this incident as well, claiming racial discrimination, but he argues the grievance the union submitted contained no reference to racial discrimination. Moultrie claims he was moved to less desirable shifts, advised to transfer to equipment with less pay and a loss of seniority, and not allowed to file grievances all based on racial discrimination. He contends that these actions breached the contract between the union and Penn Aluminum.

Penn Aluminum claims that Moultrie's claims are time-barred under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §185. Penn

Aluminum argues that Moultrie failed to bring his claim within the required six month time, and thus it is time barred.

The Supreme Court, in *DelCostello v. Int'l Bhd of Teamsters, et al.*, held that the six-month limitations time period under 10(b) of the National Labor Relations Act ("NLRA"), 29 U.S.C. §160(b) is the applicable statute of limitations that governs a hybrid § 301 suit with claims against both an employer for breach of the CBA and against the union for breach of duty of fair representation. 462 U.S. 151 (1983). The Seventh Circuit upheld the district court's grant of summary judgment for time-barred claims under § 301 in a case factually similar to this. *Chapple v. Nat'l Starch & Chem. Co. and Oil*, 178 F.3d 501 (7th Cir. 1999). In *Chapple*, the court found that the plaintiffs filed suit more than six months after the accrual of any of their claims, therefore all claims exceeded the applicable statute of limitations. *Id.* at 506.

Similarly, in this case, Moultrie filed his first grievance against Penn Aluminum on February 27, 2009. Moultrie filed his later grievances on March 9, 2009, and April 17, 2009. In accordance with its procedure, Penn Aluminum held the Step 3 meeting to address Moultrie's grievances on April 29, 2009, and rendered its decision denying all grievances on May 21, 2009. However, Moultrie filed his first amended complaint on October 26, 2011, alleging his claims for breach of contract and breach of duty of fair representation for the first time, clearly more than six months later. Thus, the Court finds that Moultrie's claim for breach of contract against Penn Aluminum in Count I is time-barred.

Accordingly, the Court grants summary judgment for Penn Aluminum against Count I.

**Count III Racial Discrimination**

In Count III, Moultrie, who is African American, claims Penn Aluminum demoted him from his position driving the fork truck due to racial discrimination, although he concedes that he had some performance issues. He also alleges that other similarly situated white employees experienced similar performance issues on the job and were treated more favorably than he. Further, Moultrie alleges he was retaliated against when he filed a grievance claiming racial discrimination.

In order to establish a prima facie case for racial discrimination sufficient to withstand summary judgment, the plaintiff must demonstrate a violation of Title VII and § 1981 using either the direct or the indirect method. *Sun v. Bd. of Trs. of Univ. of Illinois*, 473 F.3d 799, 812 (7th Cir. 2007). Under the direct method, Moultrie must prove the defendant was motivated by evil motive in its actions toward him. *Id.* The Seventh Circuit recognizes three types of "circumstantial" evidence of intentional discrimination: (1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified

for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination. *Id.*

Under the indirect method, established in *McDonnell Douglas Corp. v. Green*, Moultrie needs to demonstrate that he is a member of a protected class, that he performed reasonably well at his job meeting Penn Aluminum's legitimate expectations, that despite his reasonable performance, he experienced an adverse employment action, and that similarly situated employees not in Moultrie's protected class were treated more favorably. 411 U.S. 792, 802 (1973). If Moultrie is able to establish a prima facie case, the burden then shifts to Penn Aluminum to rebut Moultrie's claim by showing a legitimate non-retaliatory reason for Moultrie's demotion. *Id.* If Penn Aluminum is able to articulate a legitimate non-discriminatory reason for its decision to demote Moultrie, then Moultrie resumes his original burden of proof and must establish by a preponderance of the evidence that Penn Aluminum's proffered reason is pretextual. *Nichols v. Southern Illinois Univ. Edwardsville*, 510 F.3d 772, 783-84 (7th Cir. 2007).

In this case, Moultrie claims his demotion was racially motivated, and that when he complained about the demotion he was written up. Additionally, Moultrie contends that when he filed a grievance through his union steward, claiming racial discrimination, the grievance report filed made no mention of racial discrimination. Moultrie further contends he was written up several more times in retaliation for filing the grievance and alleging racial discrimination.

Moultrie failed to sufficiently carry his burden of proof to demonstrate a prima facie case of discrimination. He did not show that he was meeting Penn Aluminum's expectations before the adverse employment action. On one occasion, Moultrie failed to operate an annealing oven properly, which resulted in a delay of a customer's shipment. Another incident involved Moultrie dropping a coil from the fork truck he was driving. The record reflects that Moultrie was counseled and given time to improve his skills before he was demoted. Therefore, his subsequent demotion was due to his not meeting the expectations of his employer.

Moultrie also failed to show evidence of a similarly situated employee not from his protected class, who was treated more favorably after having the same performance issue with duties on the fork truck. The similarly situated requirement typically requires evidence of a comparable employee who dealt with the same supervisor, was subject to the same standards, and engaged in similar conduct without additional circumstances that would differentiate the two. *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 404 (7th Cir. 2007). Moultrie identified Dave Billups as a similarly situated non-African American employee who had the same performance issues with equipment as Moultrie and was not written up for the infractions. However, Billups was disciplined for his performance issues, as evidenced by the grievance report he filed. The other workers to whom Moultrie refers as having received favorable treatment were not, in fact, similarly situated. Tom Robertson worked under a different supervisor

and was a loader.  Evan James and Pat Byram were not fork truck drivers.  Matt Lee did not have any performance or discipline issues.  None of these men fulfill the requirements to show a similarly situated individual who was not a member of the same protected class, and was treated more favorably under the same circumstances.

In addition, Penn Aluminum disqualified three other similarly situated fork truck drivers who were not African American:  Anthony Kinsey for violation of safety rules and unsafe act; Kent Aspen for violation of safety rules and unsafe act; and Ryan Maclin, who was subsequently discharged, for dishonesty, substandard work, violation of conduct and safety rules, being under the influence of substances, carelessness, and failure to report damage.  Therefore, the Court finds that Moultrie has failed to prove there is any genuine issue of material fact that Penn Aluminum treated him differently in the same situations because of racial discrimination.  Accordingly, the Court grants summary judgment for Penn Aluminum against Count III.

**Count V Retaliation**

In Count V, Moultrie claims Penn Aluminum retaliated against him after he filed a grievance claiming that he was reassigned to a lower seniority job because of racial discrimination.  Title VII's anti-retaliation provision forbids employer actions that "discriminate against" an employee because he has "made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing." § 2000e–3(a); *Burlington Northern and Santa Fe Ry. Co. v. White*, 548

U.S. 53, 59 (2006); *Thomas v. Potter*, 202 Fed. Appx. 118, 119 (7th Cir. 2006). A plaintiff must show that there is a causal connection between the adverse employment action and his statutorily protected activity, in this case, Moultrie's demotion and his right to file a grievance alleging racial discrimination. *Nagel v. Village of Calumet Park*, 554 F.3d 1106, 1121-22 (7th Cir. 2009). To establish retaliation pursuant to Title VII, the employer must have had actual knowledge of the protected activity in order for its decisions to be retaliatory; it is not sufficient that "[an employer] could or even should have known about [an employee's] complaint." *Id.* at 1122.

Under the direct method, the plaintiff must provide either direct evidence or circumstantial evidence that shows that the employer retaliated based on prohibited motivation. *Mattson v. Caterpillar, Inc.*, 359 F.3d 885, 888 (7th Cir. 2004). Under the indirect method, the plaintiff must provide evidence that "after filing the charge only he, and not any similarly situated employee who did not file a charge, was subjected to an adverse employment action even though he was performing his job in a satisfactory manner." *Id.*

However, as discussed above, Moultrie did not meet his burden of proof to show that he was performing his job in a satisfactory manner and meeting Penn Aluminum's reasonable expectations as his employer. The record reflects that Moultrie was written up and reassigned based on performance issues and mistakes on the job. Moultrie failed to prove he was treated differently based on a discriminatory factor. Consequently, the actions taken against him were for

legitimate reasons and were not retaliatory. Furthermore, by his own admission, Moultrie's grievances filed by the union on his behalf failed to contain any mention of racial discrimination. Thus, Moultrie's claim for retaliation is doomed because his grievance did not comprise a protected expression under § 1981 or under Title VII's anti-retaliation section. If Penn Aluminum did not know that Moultrie was alleging racial discrimination for its adverse actions toward him, it cannot be trying to penalize him for making them. *Nagel*, 554 F.3d at 1122. The Court finds Moultrie has failed to make a prima facie case of retaliation under the law and grants summary judgment to Penn Aluminum on Count V.

## IV. Conclusion

Based on the aforementioned reasons, the Court concludes no genuine issues remain for the trier of fact regarding whether Penn Aluminum breached its contract with Moultrie as a member of the union, whether Penn Aluminum racially discriminated against Moultrie, or whether Penn Aluminum retaliated against Moultrie for filing grievances concerning his reassignment and write-ups. Hence, the Court finds Penn Aluminum is entitled to judgment as a matter of law. Accordingly, defendant's motion is **GRANTED** on this basis.

The Court also **DENIES** as moot Penn Aluminum's motion to exclude testimony by plaintiff's expert, Robert Carter (Doc. 188).

**IT IS SO ORDERED.**

Signed this 2nd day of May, 2013.

Digitally signed by
David R. Herndon
Date: 2013.05.02
16:33:51 -05'00'

**Chief Judge
United States District Court**